[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 13-10225; 13-10347
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cv-23641-FAM

MARLITE, INC.,
individually,

Plaintiff - Appellant,

versus

ALVIN ECKENROD,
individually,

Defendant - Third Party Plaintiff - Appellee,

JAMES ROBBINS,
JERRY DAGAN,

Third Party Defendants - Appellees,

MODULAR WOOD SYSTEMS INC.,
individually,

Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 15, 2013)

Before CARNES, Chief Judge, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Marlite, Inc. sued Alvin Eckenrod alleging that he breached their non-competition agreement.[1]  After a trial, the jury returned a verdict in favor of Eckenrod.  Marlite moved for judgment as a matter of law or, alternatively, for a new trial, which the court denied.  Marlite appeals those denials.  Eckenrod signed the non-competition agreement as part of Marlite's purchase of Precision Wood Products, a company that Eckenrod partially owned.[2]  At the time of the agreement, Eckenrod also owned Modular Wood Systems.  Both companies sold slatwall, with Precision focusing its business in Florida and Modular focusing along the east coast.

We review <u>de novo</u> the district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court.  <u>Pensacola Motor Sales, Inc. v. Eastern Shore Toyota, LLC</u>, 684 F.3d 1211, 1226 (11th Cir. 2012).  "That standard is heavily weighted in favor of preserving the jury's verdict," and

---

[1] Marlite's complaint asserted six other claims against Eckenrod and his business, Modular Wood Systems.  The only claim at issue in this appeal is the one against Eckenrod for breach of the non-competition agreement.

[2] Eckenrod sued the other two owners of Precision for indemnity.  The district court granted summary judgment to those third-party defendants.  Eckenrod cross-appealed that decision "purely on a protective basis" in case Marlite prevailed in its appeal.  Because we conclude that Marlite is not entitled to judgment as a matter of law or a new trial, we need not decide whether summary judgment on the third-party claim was properly granted, and we dismiss the cross-appeal as moot.

"guided by the principle that credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (quotation marks and alteration omitted). Judgment as a matter of law should not be granted if "there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party." Id. "We review a District Court's ruling on a motion for new trial for abuse of discretion." Rosenfeld v. Oceania Cruises, Inc., 682 F.3d 1320, 1325 (11th Cir. 2012).

I.

Marlite first argues that the district court should have found, as a matter of law, that Eckenrod's operation of Modular in Florida breached a provision of the non-competition agreement that Eckenrod signed, which required that Eckenrod not "[e]nter into or engage in any business which competes with [Marlite's] business as currently conducted or as it is conducted after the Closing Date of the Asset Purchase Agreement." That provision also contained an exemption for Modular: "Notwithstanding the above, [Eckenrod] . . . may after the Closing Date of the Asset Purchase Agreement continue to own, operate and conduct in competition with [Marlite] and as conducted as of the Closing Date of the Asset Purchase Agreement, the following businesses owned by [Eckenrod]: Modular Wood Systems, Inc. and Interlam, Inc."

3

Marlite argues it is entitled to judgment as a matter of law because the evidence showed that all but one of Modular's Florida clients at the time the asset purchase agreement was signed were clients it shared with Precision, and Modular sold to more than that one Florida client after the agreement was signed. Eckenrod testified at trial that before the agreement, Modular made sales to ten Florida clients that it shared with Precision. And he testified that after the agreement was signed, Modular continued to sell to eight of those clients even though the alliance with Precision no longer existed.

Marlite argues that the clients Modular originally got through its alliance with Precision were not covered by the exemption. But the plain language of the exemption does not require such a finding. A reasonable jury could find that because Modular already did business with those clients at the time the agreement was signed, the exemption covered any business it continued to do with them after the agreement was signed. There was a legally sufficient basis for a jury to find that Modular did not violate the non-competition agreement by doing business with Florida clients because that conduct fit within the exemption.

## II.

Marlite argues that even if it is not entitled to judgment as a matter of law, it is entitled to a new trial because the jury's verdict in favor of Eckenrod was against the great weight of the evidence. "Because it is critical that a judge does not

4

merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation marks omitted). At trial the parties presented conflicting evidence about whether the business Modular did with its Florida clients after the agreement was signed fit within the non-competition exemption. Given that conflicting evidence and the opposing inferences that could be drawn from it, the district court did not abuse its discretion in refusing to grant Marlite a new trial. See Cavic v. Grand Bahama Development Co., Ltd., 701 F.2d 879, 887 (11th Cir. 1983) ("[G]iven the conflicting evidence and the hotly contested inferences drawn therefrom, denial of the defendant's motion for a new trial was not an abuse of discretion.").

Marlite also argues that it should be granted a new trial on the ground that, over Marlite's objection, Eckenrod was permitted to present inadmissible testimony. A new trial should be granted if inadmissible evidence is presented to the jury only if that evidence affects a party's substantial rights. See Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1465 (11th Cir. 1994) (holding that the judge abused his discretion in failing to grant a new trial after erroneously permitting highly prejudicial testimony about an expert witness's unrelated bankruptcy, forgery accusation, and censure). To show

5

that an evidentiary ruling affected its substantial rights, the complaining party "bears the burden of proving that the error probably had a substantial influence on the jury's verdict." Proctor v. Fluor Enterprises, Inc., 494 F.3d 1337, 1353 (11th Cir. 2007).

Marlite argues that testimony from Robert Milne, the attorney who negotiated the non-competition agreement and one of Eckenrod's witnesses, violated the district court's order granting Marlite's motion in limine. That order prevented Milne from testifying "as to the meaning of the non-competition agreement at issue in this case." At trial, Milne testified that "the final version of the exemption language . . . didn't touch Modular Wood's business" and that "Modular was a free agent to do what it wanted." Marlite argues that Milne's testimony misled the jury about how broad the exemption was. Even if some of Milne's testimony was inadmissible, it is unlikely that that testimony had a substantial influence on the jury's verdict. The jury was given the language of the exemption and heard testimony from both sides about what the exemption covered.[3] The only evidence Marlite offers to show that Milne's testimony

---

[3] Marlite also argues that the testimony of Eckenrod and statements of his attorney are grounds for a new trial because they included statements that were inconsistent with the district court's interpretation of the exemption as explained in the district court's order denying both parties summary judgment. There was, however, no order barring other witnesses or counsel from making statements about the exemption's coverage. The order limited only the testimony of Milne. When the district court denied the parties' cross-motions for summary judgment, the issue of whether Modular's business dealings in Florida fit within the non-competition exemption became a question of fact left to the jury to decide, regardless of the district court's

affected its substantial rights is the fact that the jury decided against it.  But, as we have already discussed, the jury was presented with sufficient evidence to find that Modular's business dealings in Florida were covered by the exemption even if the exemption was not as broad as Milne said it was.  The court did not abuse its discretion in concluding that Marlite was not entitled to a new trial on the basis of that testimony.

**AFFIRMED.**

---

interpretation of the exemption at the summary judgment stage.  Cf. Pensacola Motor Sales, 684 F.3d at 1219–20 ("[A] party may not appeal an order denying summary judgment after there has been a full trial on the merits.").